IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA<br><br>Petitioner,<br><br>v.<br><br>SCOTT A. WAAGE, as President of The Waage Law Firm<br><br>Respondent. | Civil No. 08-cv-0919-IEG<br><br>**ORDER REQUIRING RESPONDENT TO MEET AND CONFER WITH IRS AGENT** |
|---|---|

The IRS has filed a petition to enforce a summons it issued to Scott A. Waage as President of the Waage Law Firm. The IRS issued the summons in furtherance of its investigation of the tax liabilities of the Firm for the tax years 2003 and 2004. Respondent has filed an opposition to the petition, arguing he has produced numerous documents but has withheld from production the Firm's billing statements because those statements contain voluminous attorney-client privileged communications. Respondent has provided the government with two privilege logs, one for each of the tax years for which the IRS seeks records. The government has filed a reply.

The Court found the matters raised in the petition and responsive papers to be appropriate for decision on the papers and without oral argument, and the Court vacated the hearing date.

### *Background*

The IRS is conducting an investigation of the federal income tax liabilities of the Waage Law Firm for the tax years 2003 and 2004. [Declaration of Revenue Agent George R. Lee ("Lee Decl."), Doc. No. 2, ¶ 3.] On May 18, 2007, Revenue Agent Lee issued an IRS summons to Scott Waage as President of the Waage Law Firm. The summons called for Mr. Waage to appear on June 4, 2007 to give testimony and produce documents for examination. [Lee Decl., ¶ 4 and Exhibit A.] Mr. Waage appeared on June 4, 2007, and produced all bank statements, corporate minutes, and the general ledger of the Firm, as requested by the summons. [Declaration of Scott A. Waage ("Waage Decl."), Doc. No. 5-1, ¶ 12.] However, Mr. Waage refused to produce billing statements, invoices and receipts as requested by the summons. [Lee Decl., ¶ 7.]

Mr. Waage advised Revenue Agent Lee in writing that except for billing statements, the Firm "does not generate invoices or provide invoices to its clients." [Waage Decl., ¶ 13.] With regard to the request to produce all "related billing statements," Mr. Waage informed Revenue Agent Lee in writing that the "billing statements are comprised of voluminous communications between attorney and client which are protected under Federal and state law." [Id., ¶ 14 and Exhibit A (Doc. No. 5-3).]

Mr. Waage has provided a copy of a typical billing statement[1] in support of his opposition to the IRS petition. [Waage Decl., ¶ 16 and Exhibit B (Doc. No. 5-4).] According to Mr. Waage:

> The billing statements of the Firm are unusually detailed and set forth the date services were performed, the specific nature of the services provided, specific detail on the advice given to clients, detail on specific areas of law researched, the motivation and purpose of recommended transactions, the time spent in the performance of such services and other detail comprising confidential communications to the clients.

---

[1] The billing statement is a document admitted into evidence in the San Diego County Superior Court in the context of a fee dispute with a client, where the client waived the attorney-client privilege. [Waage Decl., ¶ 16.]

1  [Waage Decl., ¶ 15.]  Because the statements are so detailed, the Firm's billing statements for the year
2  2003 comprises 10,054 pages. The statements for the year 2004 comprise 12,999 pages.  [Declaration of
3  Michael Duell ("Duell Decl."), Doc. No. 5-2, ¶ 5.]
4  The Firm's business manager has prepared a privilege log utilizing the Firm's 2003 and 2004
5  billing statements. [Doc. Nos. 5-5 and 5-6.]   These privilege logs identify the client code indicating the
6  identity of the client, the billing date, the invoice number, the billing matter code indicating the general
7  nature of the work performed, and the dollars billed.  [Duell Decl., ¶ 6.]
8  In addition to the summons issued to Mr. Waage, the IRS issued summonses to more than 30
9  clients and former clients of the Firm on July 12, 2007. [Waage Decl., ¶ 6.]  The IRS has also initiated
10 an examination of the federal income tax liabilities of approximately 100 clients and former clients of the
11 Firm.  [Waage Decl., ¶ 7.]

## *Discussion*

13 In order to obtain judicial enforcement of an IRS summons, the United States "must first establish
14 its 'good faith' by showing that the summons:  (1) is issued for a legitimate purpose;  (2) seeks
15 information relevant to that purpose;  (3) seeks information that is not already within the IRS' possession;
16 and (4) satisfies all administrative steps required by the United States Code."  Fortney v. United States,
17 59 F.3d 117, 119 (9th Cir. 1995) (citing United States v. Powell, 379 U.S. 48, 57-58 (1964)).  "The
18 government's burden is 'a slight one' and typically is satisfied by the introduction of the sworn
19 declaration of the revenue agent who issued the summons that the Powell requirements have been met."
20 Id. at 120.  Once the government has made a prima facie showing that enforcement of the summons is
21 appropriate, the burden shifts to the respondent to show that enforcement of the summons would be an
22 abuse of the court's process.  Powell, 379 U.S. at 58.  The Supreme Court has characterized respondent's
23 burden as a heavy one.  Id.
24 Here, the government's petition and Revenue Agent Lee's supporting declaration satisfies all four
25 elements of the Powell standard.  First, Revenue Agent Lee issued the summons to Mr. Waage in
26 furtherance of an investigation of the federal income tax liabilities of the Waage Law Firm, a purpose
27 explicitly authorized under 26 U.S.C. § 7602(a) (IRS may issue summons "[f]or the purpose of

ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax . . ., or collecting any such liability . . ."). Second, the documents sought by the summons, including the billing statements, are relevant to the IRS's determination of the Firm's tax liability. Third, Revenue Agent states the documents and data contained therein are not already in the possession of the IRS. [Lee Decl., ¶ 12.] Finally, the IRS has satisfied all administrative procedures. [Id., ¶ 14.]

However, IRS summonses are "subject to the traditional privileges and limitations" including the attorney-client privilege. Upjohn Co. v. United States, 449 U.S. 383, 398 (1991); see also United States v. Zolin, 491 U.S. 554, 562 (1989). Mr. Waage acknowledges that the identity of a client, the amount of fees, the identification of payment by case file name, and the general purpose of the work performed are usually items not protected from disclosure by the attorney-client privilege. Clarke v. American Commerce Nat'l Bank, 974 F.2d 127, 129 (9th Cir. 1992). However, "correspondence, bills, ledgers, statements, and time records which also reveal the motive of the client in seeking representation, litigation strategy, or the specific nature of the services provided, such as researching particular areas of law, fall within the privilege." Id. Mr. Waage argues that because the Firm's billing records contain this type of privileged information, the Court should not order him to produce the records to the IRS.

Upon review of the sample billing statement from the Firm, it is apparent the statements contain the type of information expressly covered by the attorney-client privilege. The billing statements reveal the specific nature of the services provided and the strategy for such services. In addition, Mr. Waage has demonstrated it would be unduly burdensome for him to redact the billing statements to remove the attorney-client privileged materials. The Firm's business manager has provided a declaration stating the billing statements from 2003 and 2004 comprise a total of 23,053 pages. It would be unreasonable to require Mr. Waage or someone else from the firm to go through 23,053 pages of information to redact the privileged communications.

Finally, the IRS argues the information it seeks may be available in another format, from invoices the Firm sent to its clients. However, the firm's business manager, Mr. Duell, has stated in his

declaration that "[o]ther than the billing statements described herein, the Firm does not generate invoices or provide invoices to its clients." [Duell Decl., ¶ 2.]

In its reply, the IRS argues it seeks only billing records with complete client names, or a key to translate the client codes listed on the privilege log, to identify client names.  As such, it appears the only information the IRS seeks to learn from the billing statements is the identification of the Firm's clients. Mr. Waage can provide this information to Revenue Agent Lee, permitting Revenue Agent Lee to identify the Firm's clients based upon the client codes contained in the privilege logs.  Once Revenue Agent Lee has this information, if he needs additional information to complete his investigation, the IRS can request additional relief on the Petition.

### *Conclusion*

On or before **Friday, October 17, 2008**, Respondent must meet and confer in person with Revenue Agent Lee at his office located at 880 Front Street, Suite 3269, San Diego, CA  92101.  Mr. Waage should contact Revenue Agent Lee at (619)557-7720 to arrange a mutually convenient time for this meeting.  If, following this meet and confer, IRS Agent Lee needs additional information to complete his investigation, Petitioner may file a request for the Court to take further action on the Petition.

**IT IS SO ORDERED**.

DATED:  September 30, 2008

**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**